**DAVID R. REED, State Bar #62479**
Attorney at Law (Automatictrials@yahoo.com)
3699 Wilshire Blvd. #850
Los Angeles, Ca. 90010
(310) 854-5246
(442) 227-4002

Attorney for: MELVIN EDWARDS

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | NO: CR-17-239 PA-1 |
| ) | |
| Plaintiff, ) | |
| ) | POSITION OF MELVIN EDWARDS |
| -vs- ) | RE: SENTENCING FACTORS |
| ) | |
| MELVIN EDWARDS, ) | |
| ) | Date: August 6, 2018 |
| Defendant ) | Time: 8:30 am |
| _____ ) | |

To: the above-entitled Court, and Assistant United States Attorney, Julia Choe:

Comes now David R. Reed, Counsel for defendant, Melvin Edwards ("Mr. Edwards")

and files his Position Re Sentencing Factor Brief agreeing with the calculation of the

guidelines by the Probation Office, but asking the Court to vary downward and sentence Mr.

Edwards to 40 months.  Imposing a sentence of 77 months for possessing a firearm in a

locked glove-box after having been convicted of felonies is serious, but under the

circumstances of this case, not a minimally-sufficient sentence under 3553 factors.


Dated: July 10, 2018                    Respectfully submitted

                                         /S David R. Reed

                                        _____

                                        David R. Reed for Melvin Edwards

1                         **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I. Introduction**

3     This is a difficult case.  The guidelines for possessing a firearm after having been

4 convicted of two drug-related felonies are very severe.  In this particular case, however, the

5 circumstances of Mr. Edward's case do not require a Draconian 77-month sentence.

6     For example, when one traffics in 399 grams of heroin, or 1.99 kilograms of cocaine,

7 the Base Offense Level for spreading these amounts of poison into the community is the

8 same as the guidelines for defendants crime.  The Base Offense Level would be 24, pursuant

9 to Guideline 2D1.1 (8).   When a defendant creates a scheme to defraud victims and steals

10 1.5 million dollars, the Base Offense Level is level 24, pursuant to Guidelines 2B1.1(a)(b)

11 (I).  However, the gravamen of defendants conduct was simply that he was driving a car with

12 tinted windows, was stopped by a police officer, fully cooperated, gave consent to search his

13 car, and he possessed a firearm and some ammo locked in his glove box.  Defendant hurt no

14 one.  Defendant never used the weapon in any way, or in relation to any crime.   He simply

15 possessed a gun and some ammo.

16     Defendant was not immediately charged in the case and not arrested on this indictment

17 until December 12, 2017.  Defendant  has been detained since that date.  Yes, Mr. Edwards

18 must be punished, but a 77 month sentence does not fit the dangerousness of the crime.

19     While counsel cannot camouflage Mr. Edward's criminal history and knows how

20 important this factor is to the Court when it considers its sentences, it's important for the

21 Court to consider the following circumstances in Mr. Edward's case:

22     (1) Defendant was 39 years of age when he committed the instant offense.  The

23 Probation Office was correct in stating that defendants two prior drug convictions must be

24 "countable" to qualify for the onerous Base Offense Level 24, i.e. they must be convictions

25 which receive criminal history points, pursuant to Guideline 4A1.1(a) [PSR ¶ 18].  But let's

26 look closely at the priors.   Defendants first drug prior occurred when he was only 18 years

27 old (PSR ¶ 37).  That was 21 years ago.  The offense entailed defendant possessing cocaine-

28 base for sale. Defendant was arrested on February 21, 1997 and accepted responsibility 4

days later by pleading guilty.  He was sentenced on February 27, 1997.  The Court is aware that under Guideline § 4A1.2(e), there is a "15-year" time-limit rule for convictions when defendants serve a sentence of over one-year-and-one-month.  The 15-year limit, unfortunately, can run from when the defendant was incarcerated for any part of such sentence within a 15-year period of committing the instant offense.

        Here, Mr. Edwards was initially given a sentence of 3 years probation and only 120 days in county jail....not a sentence of over one-year-and-one-month.   However, defendant violated his probation, was given more county jail, and eventually given 3 years of prison on January 13, 1999.   Then, he violated parole.   After serving portions of the 3 year prison sentence he was finally released from prison on the original conviction on September 11, 2003.   The offense conduct in the instant case occurred on September 14, 2017....14 years from the date defendant was released from this state prison term, but based on a conviction which occurred when defendant was only 18 years old.  It's unfair to apply the Base Offense Level of 24 when the drug crime occurred 21 years ago.  Yes, it technically applies, but we ask the Court to consider this as a 3553 mitigating factor and vary downward because defendant just made it over the cusp to fall into Base Offense Level 24 when in fact the prior was 21 years old.

    Then, let's look at the second predicate drug prior.   When the Court reads this, it may agree that Mr. Edwards was certainly not the Pablo Escobar of the Inland Empire. (Refer to PSR ¶ 44).  To begin with, the conviction occurred when defendant was 26, that's 14 years ago.   Rialto Police searched Mr. Edward's closet and found a monumental 3.3 grams of marijuana plants growing inside it.   The closet was no bigger than 10 x 10 feet.   Again, we are talking 3.3 grams!   Defendant had a medical marijuana license.   Mr. Edwards, to his discredit however, knew he had a shotgun nearby on a window sill.   For this heinous offense he received 4 years in prison.   That's a pretty hefty sentence for 3.3 grams of marijuana plants located inside a closet a short distance away from a shotgun.

    To be clear, we are not asking the Court to mix apples with oranges, i.e. the base offense level being apples, the criminal history being oranges.  We acknowledge that Mr. Edwards

3

has a deserved Criminal History Category of VI, a quite-ripe orange.  But the apples-part of his guideline calculation, the base offense level 24, truly over states the danger of the resultant guideline range and the crime defendant committed.   We do not ask the Court to vary downward in the criminal history score, just the base offense level.

Were the Court to agree that it's unfair to saddle defendant with a Base Offense Level of 24 based on these ancient drug priors, the same level given to major drug dealers or heartless fraudsters, the Base Offense Level would still be high at level 20 pursuant to Guideline 2K2.1(a)(4).   The lower base offense level of 20 applies to felons-in-possession-of-firearms who have one prior crime of violence, or drug offense.  We ask the Court to view the Base Offense Level in Mr. Edward's case as a Level 20, but not 24.   Were it to do so, the range would be 51 - 63 months with a Criminal History VI.  Surely, that is a more appropriate range for what defendant did in this case.   Under 3553 factors we ask the Court to vary downward another 11 months, to 40 months.

2) To repeat, no one can argue that Mr. Edward's Criminal History is over stated at Level VI.   But let's look at his record too.   In viewing the 3553 arguments as a whole, the Court should note that most of Mr. Edward's serious crimes occurred between the ages of 18 - 26.  (See PSR ¶s 35 - 44).  After Mr. Edwards turned 26, his record consists mostly of drunk-driving or driving-without-a-license offenses.   Again, Mr. Edwards will turn 40 by the time he is sentenced.  Mr. Edwards is older and wiser and he wants to simply return to his wife and step-daughter, get a good job and stay out of trouble forever.  No more drinking at bars, no more drinking at all, no more driving after drinking, and no more driving without a license. Mr. Edwards has a stable home and a loving family waiting for him.   Defendant has job skills too.   Over the past 12 years Mr. Edwards has tried to turn his life around by engaging in lawful businesses such as selling used cars, or working as an electrician.

Counsel is asking the Court not to view Mr. Edwards as such a danger to the community, but rather someone who for the past 12 years has tried to make the community better, albeit he has an alcohol problem then witlessly drives.

3) The Court is referred to the letters attached to this brief.  To Mr. Edward's credit,

4

he is someone who is not afraid to work.  Ever since he was a child helping his grandfather in the landscape business, Mr. Edwards has worked.  The Court is referred to defendant's employment record (PSR ¶s 100 - 105.)  In 2015, Mr. Edwards even obtained his electricians certificate from a trade school and worked for Gould Electric after his graduation.  Mr. Edwards decided to go into the used car business with a close friend instead of being an electrician, he obtained a business license and operated Jack and Bird Used Auto Sales in San Bernardino.  The PSR may be incorrect at ¶ 100 in stating that Mr. Edwards was/is "not the owner" of Jack and Bird Used Cars.  Counsel has attached the business license to this brief reflecting that the business was in defendants name, but he did indeed operate the business with his friend and partner, Jeff Jones.

The Court is also asked to consider that Jack and Bird sponsored a little league baseball team and Mr. Edwards took great joy in attending their games.  Over the past 12 years, again, but for drinking and driving, defendant has done everything in his power to turn his life around and support his beloved wife and step-daughter.  Mr. Edwards knows that he will have to go to prison, but he hopes the Court will not sentence him to more than 40 months.

4) Perhaps one of the most important factors counsel knows the Court considers when sentencing is how the defendant has conducted himself overall, not simply from the date of his arraignment, but from the time of detention.  The Court knows that the behavior of a defendant is a good way to detect a defendant's contrition and acceptance of responsibility. This is a good way to tell if someone is salvageable.  Mr. Edwards certainly is salvageable. Let us look at what has happened in this case.

Mr. Edwards was stopped by a Sheriffs Officer, he was well behaved and complied with everything asked of him.   Mr. Edwards told the officer the truth, that he had no license because he had "DUIs."  There was a passenger in Mr. Edward's car and that individual was asked to exit the car.   Mr. Edwards then gave the officer permission to search his car and even gave the  key to open the glove box.  The box had been locked for safety purposes.  The officer saw the gun and without prompting Mr. Edwards immediately told the officer that the gun was "his" and his passenger "had nothing to do with it."  (See Ex. 1).  Mr. Edwards is

a stand-up guy.   Defendant knows when he has done wrong and he has accepted responsibility. How many times has the Court seen situations where defendants deny ownership of contraband or guns and try to blame others?  Not Mr. Edwards, and we ask the Court for some leniency in approaching his sentencing.   Mr. Edwards has never been in federal court and this has been a giant wake up call for him.  Mr. Edward's crime did not hurt anyone but himself.  Defendant promises the Court that this is his last offense.

After Mr. Edwards was arraigned he was assigned a Deputy Public Defender, who, for whatever reason, he could not place his faith in.   Nevertheless, Mr. Edwards accepted responsibility early in his case, signed a plea agreement and pled guilty.   Thereafter, the Court replaced the FPD with current counsel and Mr. Edwards did nothing to show he wanted to withdraw his plea or continue litigation in his case.  Indeed, Mr. Edwards wanted to start his rehabilitation and go forward with sentencing.   Mr. Edwards is now asking the Court for leniency, as he has done everything in his power from the time of  his detention on the street to show his complete contrition.  Although the accurate guidelines are very high, it would be counter effective to give Mr. Edwards more prison time than 40 months for simply possessing a gun in a locked glove box after suffering very old drug priors.

**II. Guidelines**

A) The Correct Guideline

This calculation of the guidelines was correct.  The Total Offense Level is 21, at ¶ 30 of the PSR.  The Criminal History was correct at Category VI at ¶ 53.  The range is 77 - 96 months.

At Guideline 5K2.0 the Guidelines state that the court may depart from the applicable guideline range if the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines, that, in order to **advance the objectives** set forth in 18 U.S.C. 3553, should result in a sentence different from that described.  As we have argued, the 21 year old and 3.3 grams of marijuana convictions which skyrocketed defendant into Base Offense Level 24 are excessive and unwarranted.  We ask the Court  to depart to

level 20.

**III.   3553 Factors**

The guidelines are no longer mandatory.  United States v Booker, 543 U.S. 220 (2005. In United States v Gall, 552 U.S. 38 (2007), the United States Supreme Court reiterated that Booker required the courts to individualize the sentence based on the offender.   The overriding principle and basic mandate of Section 3553(a) requires the district courts to impose a sentence "sufficient, but not greater than necessary," to comply with the four purposes of sentencing set forth in § (2), which are: (a) retribution; (b) deterrence; (c) incapacitation; and (d) rehabilitation.

**a) The History and Characteristics of the Defendant**

Mr. Edwards was raised in Pasadena in a dysfunctional home.  Defendants father died when defendant was 10 years old.  While in elementary school, defendant worked for his grandfather in his landscape business after school.  In the third grade, defendant, his brother and mother moved to Montclair to live with his mother's sister and cousins.  Unfortunately, defendant's mother and aunt were crack-cocaine addicts and thus defendant had no parental authority or supervision while growing up.

When defendant lived in Montclair he was shot in the foot as a result of a drive-by shooting and taken from his mother and placed in foster homes.  Defendant then lived with his maternal grandmother in Highland, California.  The grandmother eventually moved to Chatsworth and defendant went to high school there.  However, defendant dropped out of high school in the 11th grade, but eventually obtained a GED.

At 18 years of age defendant went to work as a security guard.  From that age forward, defendant lived with girlfriends in various cities, had 4 children, became employed delivering auto parts, went in and out of custody as set forth in the PSR, and when he was 34, he married Angela Mack in 2012.   The couple lived in Napa for a time, as Ms. Mack was a psychiatric nurse at Napa State Hospital.  (Ms. Mack's letter is attached.)

Angela Mack has a daughter and defendant has raised her as his own (the step-daughter's letter is attached.)  Ms. Mack and defendant moved back to our district and

defendant went to trade school and obtained his electricians certificate and worked at Gould Electric.  Then he sold used cars.  Mr. Edwards has a stable and loving family waiting for him when he exits prison.

### b) The Nature of the Circumstances of the Offense

Mr. Edwards owned a used car business and often times carried cash on his person. He was a convicted felon and knew he could not possess firearms, but he only had the gun in his locked glove box for self protection.  San Bernardino is not the safest, crime free area in our district.  The gun was not used in any way and not involved in the commission of any crime.   The gun and ammo simply sat inside defendant's locked glove box.  If the Court finds that a 40 month sentence cannot be countenanced, that the offense is just too serious, then we hope the Court does not give defendant more than 4 years.   We know that Mr. Edwards has an alcohol problem and he apparently smokes marijuana.  We ask the Court to Recommend the RDAP program.

### CONCLUSION

For the foregoing reasons, Mr. Edwards asks for a 40 month prison term and, importantly, we ask the Court to recommend the RDAP program.   Mr. Edwards very much wants to be placed in a BOP facility in which he can attend the RDAP program, and this takes priority over any particular location for his prison placement.


Dated: July 10, 2018                    Respectfully submitted,

                                                         /S David R. Reed

                                        _____

                                        David R. Reed for Mr. Edwards